UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO TORRES,<br><br>                              Petitioner,<br><br>v.<br><br>RALPH DIAZ, et al.,<br><br>                              Respondents. | Case No.:  19-cv-01964-LAB-JLB<br><br>**REPORT AND RECOMMENDATION FOR ORDER:**<br><br>**(1) DENYING RESPONDENTS' MOTION TO DISMISS;**<br><br>**(2) GRANTING PETITIONER'S MOTIONS FOR STAY AND ABEYANCE; AND**<br><br>**(3) DENYING PETITIONER'S MOTION FOR LEAVE TO AMEND**<br><br>**[ECF Nos. 31; 35; 44; 49]** |

## I.    <u>INTRODUCTION</u>

On September 20, 2019, Petitioner Eduardo Torres, a state prisoner proceeding *pro se* and *in forma pauperis*, constructively filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (ECF Nos. 1; 9.)  Before the Court are Respondents' Motion to Dismiss (ECF No. 31), Petitioner's Motions for Stay and Abeyance (ECF Nos. 35; 49), and Petitioner's Motion for Leave to Amend (ECF No. 44).

1

This Report and Recommendation is submitted to United States District Judge Larry Alan Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rule HC.2 of the United States District Court for the Southern District of California.   After a thorough review of the parties' motions and the record before the Court, the Court **RECOMMENDS** that the District Court **DENY** Respondents' Motion to Dismiss, **GRANT** Petitioner's Motions for Stay and Abeyance, and **DENY** Petitioner's Motion for Leave to Amend.

## II.   PROCEDURAL BACKGROUND

On September 20, 2019, Petitioner constructively[1] filed a Petition for Writ of Habeas Corpus ("Original Petition") pursuant to 28 U.S.C. § 2254 challenging the conviction and sentence imposed on him by the San Diego Superior Court in case number SCD267474. (ECF No. 1 at 1.)   On January 10, 2020, Respondents moved to dismiss the Original Petition as time-barred under 28 U.S.C. § 2244(d).  (ECF No. 14.)

On February 21, 2020, Petitioner filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition") containing an additional, unexhausted claim.  (ECF No. 21 at 17.)   In light of the Amended Petition, the Honorable Larry Alan Burns denied Respondents' Motion to Dismiss (ECF No. 14) as moot on March 3, 2020.  (ECF No. 22.)

On March 20, 2020, Respondents moved to dismiss the Amended Petition on the grounds that the Original Petition was time-barred under 28 U.S.C. § 2244(d) and the Amended Petition contained an unexhausted claim.  (ECF No. 31.)   Petitioner filed an opposition on May 24, 2020.  (ECF No. 41 at 3.)

///

---

[1]   As an incarcerated and *pro se* litigant, Petitioner is entitled to the benefit of the "mailbox rule," and the Court will consider his filings, including his state and federal habeas petitions, as filed at the moment he delivered them to prison authorities for forwarding to the clerk of court.  *See Anthony v. Cambra*, 236 F.3d 568, 574–75 (9th Cir. 2000) (applying *Houston v. Lack*, 487 U.S. 266, 275–76 (1988), and extending the mailbox rule to *pro se* prisoners' state and federal filings)).   All references in this Report and Recommendation to a filing date by Petitioner are to the constructive filing date.

On April 30, 2020, Petitioner filed a Motion for Stay and Abeyance requesting that the Court stay the case and hold his exhausted claims in abeyance pending the exhaustion of his unexhausted claim. (ECF Nos. 35; 35-1 at 1.) Respondents filed an opposition on June 17, 2020. (ECF No. 42.) Petitioner filed a reply on July 5, 2020. (ECF No. 45 at 5.) Petitioner filed a second request for stay and abeyance on November 30, 2020.[2] (ECF No. 49.)

On June 16, 2020, Petitioner moved for leave to amend the Amended Petition and add an additional, unexhausted claim. (ECF No. 44 at 3.) Respondents did not file a response to Petitioner's Motion for Leave to Amend.

## III.   RESPONDENTS' MOTION TO DISMISS AMENDED PETITION AS UNTIMELY

### A.   POST-CONVICTION PROCEDURAL BACKGROUND

Petitioner is a state prisoner incarcerated at Mule Creek State Prison ("MCSP") in Ione, California. (ECF No. 1 at 1.) On June 29, 2017, in case number SCD267474, Petitioner pleaded guilty to first-degree murder (Cal. Penal Code § 187(a)) and oral copulation by force (Cal. Penal Code § 288a(c)(2)(A)).[3] (ECF No. 15-2 ¶ 1.) Petitioner agreed to a sentence of life in prison without the possibility of parole for the first-degree murder charge and twenty-five years to life plus ten years for the oral copulation charge and was sentenced on August 4, 2017. (*Id.* ¶ 2; ECF No. 15-4 at 1.) As part of his guilty plea, Petitioner waived certain appeal rights and did not otherwise seek direct review in the California Courts of Appeal. (*See* ECF No. 15-2 ¶ 8.)

On August 1, 2018, Petitioner filed a Petition for Writ of Habeas Corpus in the San Diego Superior Court. (ECF No. 15-5 at 7.) On September 12, 2018, the superior court

---

[2]     Petitioner's second request for a stay and abeyance is presented to the Court in the form of an undated letter. The Court received the letter on November 30, 2020. (ECF No. 49 at 1, 4.)

[3]     Cal Penal Code § 288a has since been renumbered as § 287.

denied the petition.  (ECF No. 15-6 at 1.)  On September 21, 2018, Petitioner filed an amended petition in the San Diego Superior Court.  (ECF No. 15-7 at 7.)  On November 1, 2018, the superior court denied the amended petition.  (ECF No. 15-8 at 1–2.)

On November 1, 2018, Petitioner filed a Petition for Writ of Habeas Corpus in the California Courts of Appeal.  (ECF No. 15-9 at 7, 9.)  On November 7, 2018, an appellate court denied the petition.  (ECF No. 15-10 at 1.)

On March 25, 2019, Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court.  (ECF No. 15-11 at 4.)  On July 17, 2019, the California Supreme Court denied the petition.  (ECF No. 15-12 at 1.)

On September 20, 2019,[4] Petitioner filed the Original Petition in the Southern District of California, seeking federal habeas relief.  (ECF No. 1 at 15.)  The Original Petition raised seven claims: (1) general ineffective assistance of counsel; (2) ineffective assistance of counsel for failure to "investigate, develop, [and] present available important evidence" and a "diminished actuality" defense; (3) denial of a competence hearing; (4) lack of competence to stand trial; (5) unknowing and involuntary guilty plea; (6) a *Massiah* violation; and (7) coerced guilty plea.[5]  (ECF No. 1 at 6–12.)

---

[4]    Petitioner states in a supplemental declaration that he delivered the Original Petition to prison authorities for mailing on October 3, 2019.  (ECF No. 8 ¶ 5.)  However, Petitioner signed the Original Petition on September 20, 2019, and the proof of service accompanying the Original Petition provides that on September 20, 2019, Petitioner "placed a true copy" of the Original Petition "in a sealed envelop with First Class postage thereon fully prepaid in the United States Mail [and] deliver[ed] [it] to prison officials for processing through the Institution's legal mail system . . . ."  (ECF No. 1 at 15–16.)  Out of an abundance of caution, the Court deems the Original Petition filed on the earlier date, September 20, 2019.  (ECF No. 1 at 15–16.)  Respondents agree that the Original Petition's constructive filing date is September 20, 2019.  (*See* ECF No. 31-1 at 2.)

[5]    Respondents contend that "[i]t appears" Petitioner presented his first seven claims to the California Supreme Court and thus, those claims "are exhausted."  (ECF No. 31-1 at 7.)  Because Respondents do not challenge whether Petitioner exhausted Claims 1–7 in the instant motion to dismiss, the Court makes no judgment at this time whether Petitioner has in fact satisfied the exhaustion requirement for Claims 1–7.  *See Day v. McDonough*, 547

4

On February 21, 2020, Petitioner filed the Amended Petition, wherein Petitioner added an additional, and admittedly unexhausted claim to the seven claims he raised in the Original Petition.  (ECF No. 21 at 17.)  Petitioner's eighth claim in the Amended Petition alleges that counsel "failed to investigate, develop, [and] present available important evidence of [Petitioner's] cannabis-induced psychosis."  (*Id.* at 13; 45.)

**B.   STANDARD OF REVIEW**

28 U.S.C. § 2254(a) provides the scope of review for federal habeas corpus petitions:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Federal habeas corpus claims filed after April 24, 1996, such as those here, are subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997).  Under AEDPA, a petitioner must overcome a high threshold to obtain relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  AEDPA imposes a one-year statute of limitations on all federal habeas petitions filed by persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).

-----

U.S. 198, 206 (2006) (providing that "courts are under no obligation" to *sua sponte* raise "threshold barriers," as opposed to jurisdictional barriers, such as exhaustion of state remedies).

## C.   DISCUSSION

Respondents move to dismiss the Amended Petition first on the grounds that it is time-barred under AEDPA's one-year limitations period and Petitioner is not entitled to sufficient statutory or equitable tolling to render the Amended Petition timely.  (ECF No. 31-1 at 3–6.)  Petitioner argues in opposition that the Amended Petition is timely under AEDPA because he is entitled to a later limitations commencement date under § 2244(d)(1) and sufficient statutory and equitable tolling.  (*See* ECF No. 41.)

### 1.   Commencement of the Limitations Period Under 28 U.S.C. § 2244(d)(1)

To determine whether the Amended Petition is timely, the Court must first determine when AEDPA's one-year limitations period began to run.  Respondents argue that the limitations period began to run on October 3, 2017, pursuant to 28 U.S.C. § 2244(d)(1)(A).  (ECF No. 31-1 at 3.)  Petitioner contends that that the limitations period began to run on June 24, 2018, pursuant to § 2244(d)(1)(B).  (ECF No. 41 at 8, 16.)  For the reasons set forth below, the Court finds § 2244(d)(1)(B) inapplicable and agrees with Respondents that the one-year limitations period began on October 3, 2017, pursuant to § 2244(d)(1)(A).

#### a.   Legal Standard

As stated above, AEDPA imposes a one-year statute of limitations on all federal habeas petitions filed by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1).  Under § 2244(d)(1), the limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

In most cases, § 2244(d)(1)(A) applies, and the limitations period begins to run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). "It is only in 'rare instances' that, pursuant to § 2244(d)(1)(B)–(D), the limitation period may run from a date later than the date on which judgment becomes final." *Fredrick v. Vigra*, No. CV 12–04487–VBK, 2013 WL 3283527, at *6 (C.D. Cal. June 28, 2013) (citing *Isaac v. Price*, No. C 11-3903 JST, 2013 WL 749522, at *1 n.3 (N.D. Cal. Feb. 26, 2013)).

For § 2244(d)(1)(B) to apply, a petitioner must show that a state-created impediment was imposed "in violation of the Constitution and laws of the United States" and "prevented" the petitioner from filing his federal habeas petition. 28 U.S.C. § 2244(d)(1)(B). The scope of state-created impediments that affect the statute of limitations within the meaning of § 2244(d)(1)(B) is limited. As interpreted by case law, the application of § 2244(d)(1)(B) has mainly been limited to the circumstances where prison officials have unlawfully interfered with a prisoner's ability to file a federal habeas petition. *See Shannon v. Newland*, 410 F.3d 1083, 1087 (9th Cir. 2005) (collecting cases). "To obtain relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the unlawful impediment and his failure to file a timely habeas petition." *Bryant v. Arizona*, 499 F.3d 1056, 1060 (9th Cir. 2007). The standard for demonstrating a later commencement date under § 2244(d)(1)(B) is "far higher" than the standard for demonstrating an entitlement to equitable tolling. *Ramirez v. Yates*, 571 F.3d 993, 1000–01 (9th Cir. 2009). A petitioner is entitled to rely on § 2244(d)(1)(B) only if the circumstances alleged "altogether prevented him from presenting his claims in *any* form, to *any* court." *Id.* at 1001.

    b.    Discussion

As stated above, the San Diego Superior Court sentenced Petitioner on August 4, 2017, and Petitioner did not seek direct review in the California Courts of Appeal. (ECF No. 15-4 at 1.) Consequently, the judgment became final on October 3, 2017, sixty days

after Petitioner's August 4, 2017 sentencing.  Cal. R. Ct. 8.308(a); *see also Vargas v. Lawrence*, No. SA CV 11–1038 MMM (MRW), 2011 WL 7111903, at *1 (C.D. Cal. Dec. 16, 2011) ("Because he waived his right to appeal, Petitioner's conviction became final . . . 60 days after entry of judgment."), *adopted by* 2012 WL 261184 (C.D. Cal. Jan. 30, 2012). Thus, if § 2244(d)(1)(A) applies, as Respondents argue, Petitioner's last day to file his federal habeas petition under AEDPA was October 3, 2018, one year from the date judgment became final.

Petitioner argues that § 2244(d)(1)(B) applies because from August 30, 2017 through June 24, 2018,[6] he was "gravely mentally-disabled" and "committed to the care, custody treatment and control" of California Medical Facility ("CMF").  (ECF No. 41 at 8, 15.) Petitioner maintains that while at CMF, he had "no readily-available access to any legal staff/assistance" or "Court forms or Court addresses."  (*Id*. at 8, 16.)  Petitioner claims that it was not until he was transferred to MCSP that he began to have "some access to a prison law library and persons able to help him file" his first state habeas petition.  (*Id.*)  Petitioner argues that his "hospitalization commitment" was a "state-created impediment" that "prevented [him] from filing his" state habeas petition, and such impediment was removed on June 24, 2018, when he was transferred from CMF to MCSP.  (*Id.* at 8.)

The Court finds § 2244(d)(1)(B) inapplicable here for several reasons.  As an initial matter, throughout his opposition, Petitioner conflates the issue of whether he is entitled to a later trigger date under § 2244(d)(1)(B) with the issues of whether he is entitled to

---

[6]    Petitioner provides inconsistent dates for the time period in which he was hospitalized at CMF.  (*E.g.*, ECF No. 41 at 6, 8.)  For purposes of this Report and Recommendation, the Court finds that Petitioner was hospitalized at CMF beginning on August 30, 2017, and discharged on June 24, 2018, as these dates are, respectively, the earliest and latest dates that Petitioner could have been at CMF as reflected in his medical records.  (*Compare* ECF No. 15-11 at 100 ("[Petitioner] came from CMF to MCSP on 6/24/2018."), *with* ECF No. 15-9 at 26 (providing CMF treatment dates of 08/30/17–06/20/18 and a discharge summary dated 06/21/18).)

statutory and equitable tolling.  For example, in the "Statutory Tolling" section of his opposition, Petitioner argues that his "well-documented and established severe mental illnesses [and] conditions" were the "chief impediment[s]" warranting a later statute of limitations start date.  (ECF No. 41 at 15.)  Petitioner's use of the phrases "chief impediment" and "statutory tolling" in combination with a circumstance typically reserved for an equitable tolling argument leaves the Court unable to determine for what purpose(s) Petitioner makes this argument.  To the extent Petitioner contends that his mental illness is a basis for the application of § 2244(d)(1)(B), the argument fails because his mental illness is not a state-created impediment.  "Although mental incompetence may be a basis for equitable tolling," an argument the Court considers below, "it is not a basis for a later trigger date under § 2244(d)(1)(B)."  *Stewart v. McComber*, No. CV 14–01747–DSF (DFM), 2014 WL 2510927, at *3 (C.D. Cal. Apr. 25, 2014).

Next, § 2244(d)(1)(B) applies only when a state-created impediment violates the Constitution or federal laws, and Petitioner does not specifically identify any constitutional right or federal law that was violated by the state.  Petitioner does, at times, state that he was "committed," as opposed to hospitalized, and argues that he was without legal assistance, access to a law library, and court forms and addresses while at CMF.  The Court could liberally construe these allegations as arguments that Petitioner's due process rights and right to reasonable access to the courts, respectively, were violated.  However, even if Petitioner could show that his hospitalization was an involuntary commitment that violated his due process rights or that he was deprived reasonable access to the courts while at CMF, relief under § 2244(d)(1)(B) is only available if Petitioner also shows a "causal connection between the unlawful impediment and his failure to file a timely habeas petition." *Bryant v. Ariz. Atty. Gen*, 499 F.3d 1056, 1060 (9th Cir. 2007).  Petitioner has not made—and cannot make—this showing, for he was able to file his first state habeas petition on August 1, 2018, before the one-year limitations period expired.  A petitioner is not entitled to a delayed trigger date under § 2244(d)(1)(B) if he was able to file a state habeas petition before the expiration of the limitations period. *See Howard v. Holland*, No. CV 13–8327–

MWF (RNB), 2014 WL 3404975, at *6 (C.D. Cal. May 30, 2014) ("[I]n order to be entitled to a later trigger date under § 2244(d)(1)(B), the petitioner must show that the alleged impediments 'altogether prevented him from presenting his claims in any form, to any court.' Thus, the fact that petitioner here was able to file a state habeas petition during the limitation period . . . is dispositive of petitioner's contention that he is entitled to a later trigger date." (quoting *Ramirez*, 571 F.3d at 1001)), *adopted by* 2014 WL 3427453 (C.D. Cal. July 10, 2014); *Rhodes v. Adams*, No. C 06–7316 SBA (PR), 2009 WL 688842, at *5 (N.D. Cal. Mar. 16, 2009) (finding that § 2244(d)(1)(B) did not apply where the petitioner "was able to file his state habeas petition before the limitations period for filing his federal petition expired"); *see also Ramirez*, 571 F.3d at 1101 (holding that the petitioner could not show that his placement in administrative segregation and its "attendant limitations on his access to his legal file and the prison law library" warranted the application of § 2244(d)(1)(B) when he was able to file three state petitions before and after his segregation). Petitioner's hospitalization and the shortcomings in CMF's legal resources are insufficient to trigger a later start date under § 2244(d)(1)(B).[7]

///

---

[7]   The Court also notes that Petitioner argues that the lack of legal resources at CMF prevented him from filing his first "state habeas petition," not his federal habeas petition. (ECF No. 41 at 8, 16.)  AEDPA provides a later commencement date for the limitations period when state action, in violation of the Constitution or federal laws, impedes a petitioner's ability to file a *federal* habeas petition. *Ramirez*, 571 F.3d at 1000 ("AEDPA provides that if 'the applicant was prevented from filing' a federal habeas petition by an 'impediment . . . created by State action in violation of the Constitution or laws of the United States,' the limitations period will commence anew from 'the date on which the impediment to filing . . . is removed.'" (quoting 28 U.S.C. § 2244(d)(1)(B))); *e.g.*, *Barth v. Lackner*, Case No. CV 15-01398 DMG (RAO), 2016 WL 4726565, at *3 (C.D. Cal. Jan. 27, 2016) ("[D]elayed accrual under § 2244(d)(1)(B) is not warranted because Petitioner has not shown that a state impediment prevented the filing of a federal habeas petition. Rather, Petitioner claims that the state impeded his ability to file a petition for review in the California Supreme Court on direct review."), *adopted by* 2016 WL 4718943 (C.D. Cal. Sept. 9, 2016).

For the forgoing reasons, the Court finds § 2244(d)(1)(B) inapplicable here, and no circumstances warrant the application of subsections (C) or (D) of § 2244(d)(1).  Applying § 2244(d)(1)(A), the statute of limitations began to run in this case on October 3, 2017, and expired one year later on October 3, 2018.  Petitioner filed the Original Petition on September 20, 2019, nearly one year after limitations period expired.  (ECF No. 1 at 15.)  Thus, the Original Petition is untimely unless Petitioner is entitled to sufficient statutory or equitable tolling.

### 2.    Statutory Tolling Under 28 U.S.C. § 2244(d)(2)

#### a.   Legal Standard

28 U.S.C. § 2244(d)(2) provides for statutory tolling of AEDPA's one-year limitations period during the time when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  Pending for purposes of § 2244(d)(2) "includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law."  *Evans v. Chavis*, 546 U.S. 189, 191 (2006).   "[T]ime limits, no matter their form, are 'filing' conditions."  *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).  Thus, an untimely state habeas petition "must be treated as improperly filed, or as though it never existed, for purposes of [§] 2244."  *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011).

If the state court does not clearly indicate that a petition is untimely, the federal court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness."  *Stewart v. Cate*, 757 F.3d 929, 935 (9th Cir. 2010) (quoting *Evans* 546 U.S. at 190).  Most states require an appeal to be filed within a specific time after an unfavorable judgment to be considered timely.  *Carey v. Saffold*, 536 U.S. 214, 219 (2002).  However, under California's collateral review system, prisoners "file a new 'original' habeas petition" at each level of state review, and California "determines the timeliness of each filing according to a[n indeterminate] 'reasonableness' standard."  *Id.* at 221.  "In California, so called 'gap-tolling' applies to exclude the time between the denial

19-cv-01964-LAB-JLB

of relief by a lower state court and the filing of another petition in a higher state court, if the time delay is reasonable." *Torres v. Long*, 527 F. App'x 652, 654 (9th Cir. 2013).  To date, "California courts have given scant guidance as to what the State considers a 'reasonable' length of time to file an application for review." *Velasquez v. Kirkland*, 639 F.3d 964, 967 (9th Cir. 2011).  The Ninth Circuit, however, has "found an upper limit of approximately sixty days to be appropriate, unless an adequate explanation for additional delay has been provided." *Torres*, 527 F. App'x at 654; *accord Noble v. Adams*, 676 F.3d 1180, 184 (9th Cir. 2012); *Velasquez v. Kirkland*, 639 F.3d 964, 967–68 (9th Cir. 2011).

b.  <u>Discussion</u>

Here, Petitioner's first collateral challenge was the habeas petition he filed in the San Diego Superior Court on August 1, 2018.  (ECF No. 15-5 at 7.)  Petitioner is not entitled to any statutory tolling between the date his conviction became final on October 3, 2017, and August 1, 2018.  *See* 28 U.S.C. § 2244(d)(2).  Thus, at the time Petitioner filed his first collateral challenge, 63 days remained of the one-year limitations period.

i.  *Petitioner's Superior Court Petitions and Appellate Court Petition*

The San Diego Superior Court denied Petitioner's first habeas petition on September 12, 2018, finding that Petitioner had not made a prima facie case that he was entitled to relief.  (ECF No. 15-6 at 3.)  Respondents do not dispute that Petitioner is entitled to 42 days of tolling during the pendency of his first state habeas petition in the superior court, and in fact, take the position that he is entitled to tolling from August 1, 2018, until November 7, 2018, the date the court of appeal denied his appellate level petition.  (ECF No. 31-1 at 4.)

Respondents' statutory tolling analysis, however, does not address Petitioner's filing of a successive habeas petition in the superior court.  Instead of filing a habeas petition in the court of appeal after the superior court denied his first state petition on September 12, 2018, Petitioner filed a second habeas petition in the superior court on September 21, 2018. (ECF No. 15-7 at 7.)  The superior court denied this second petition on November 1, 2018,

again finding that Petitioner had not made a prima facie case that he was entitled to relief. (ECF No. 15-8 at 2.)  To determine whether Petitioner is entitled to statutory tolling during this time, the Court must examine whether Petitioner's filing of a successive habeas petition in the superior court constituted another round of habeas review such that his first round was no longer pending.

"Only the time period during which a round of habeas review is pending tolls the statute of limitation; periods between different rounds of collateral attack are not tolled." *Banjo v. Ayres*, 614 F.3d 964, 698 (9th Cir. 2010) (citing *Biggs v. Duncan*, 339 F.3d 1045, 1048 (9th Cir. 2003)).  Courts in the Ninth Circuit "employ a two-part test to determine whether the period between the denial of one petition and the filing of a second petition should be tolled."  *Banjo*, 614 F.3d 964, 968–69 (9th Cir.2010).  "First, [the court] ask[s] whether the petitioner's subsequent petitions are limited to an elaboration of the facts relating to the claims in the first petition."  *Id.* at 969 (quoting *King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003), *abrogated on other grounds by Evans*, 546 U.S. 189).  "If the petitions are not related, then the subsequent petition constitutes a new round of collateral attack, and the time between them is not tolled."  *Id.* (citing *Hemmerle v. Schriro*, 495 F.3d 1069, 1075 (9th Cir.2007)).  "If the successive petition was attempting to correct deficiencies of a prior petition, however, then the prisoner is still making 'proper use of state court procedures,' and habeas review is still pending."  *Id.*  (quoting *King*, 340 F.3d at 823).  "Second, if the successive petition was not timely filed, the period between the petitions is not tolled."  *Id.* (citing *Hemmerle*, 495 F.3d at 1075).

Here, it seems as though Petitioner's successive superior court petition was an attempt to correct deficiencies in his first superior court petition.  For one, Petitioner titles the successive petition "Amended Petition for Writ of Habeas Corpus" and attempted to incorporate by reference the "fourteen grounds for relief raised in [the] prior petition." (ECF No. 15-7 at 1.)  Further, the purpose behind the successive petition seems to be to request appointment of counsel and an evidentiary hearing, not to assert new or different grounds for relief.  (*See id.* at 3.)

Regardless of whether Petitioner's second superior court petition meets the requirements of *King*, if Petitioner's appellate court petition was timely as measured from the denial of his first superior court petition, he is entitled to gap tolling between the denial of that petition and his appellate court petition. As stated, gap-tolling in California "applies to exclude the time between the denial of relief by a lower state court and the filing of another petition in a higher state court, if the time delay is reasonable." *Torres*, 527 F. App'x at 654; *see Noble*, 676 F.3d at 1183 ("A petition that has been denied by a trial court remains pending until it is either resolved by a higher court or until the time to appeal expires."). Here, the court of appeal denied Petitioner's appellate level petition without commenting on its timeliness. (*See* ECF No. 15-10 at 1–2.) Thus, the Court must examine the delay. *See Stewart*, 757 F.3d at 935.

Fifty days lapsed between the superior court's denial of Petitioner's first habeas petition on September 12, 2018, and Petitioner's filing of a habeas petition in the court of appeal on November 1, 2018. Although "California courts have given scant guidance as to what the State considers a 'reasonable' length of time to file an application for review," *Velasquez*, 639 F.3d at 967, the Ninth Circuit has "found an upper limit of approximately sixty days to be appropriate," *Torres*, 527 F. App'x at 654. The Court therefore finds that the fifty-day lapse between the superior court's denial on September 12, 2018, and Petitioner's filing of a habeas petition in the court of appeal on November 1, 2018, was reasonable, and Petitioner is entitled to gap-tolling during this time. Further, Petitioner is entitled to an additional six days of tolling from November 1, 2018, the date he filed his appellate level petition, to November 7, 2018, the date the court of appeal denied the petition. In sum, Petitioner is entitled to 98 days of tolling from the filing of his first superior court petition on August 1, 2018, to the date the appellate court denied his petition on November 7, 2018.

///

///

///

14

1

2

ii.    *Petitioner's Appellate Court Petition and Supreme Court Petition*

3    After the court of appeal's denial on November 7, 2018, Petitioner did not file a

4  petition in the California Supreme Court until March 25, 2018, 138 days later. (ECF No.

5  15-11 at 6.) Respondents argue that Petitioner's 138-day delay in filing was unreasonable

6  and cite to three cases where the Ninth Circuit found unexplained delays of 100 days or

7  more to be unreasonable under California's reasonableness standard. (*See* ECF No. 31-1

8  at 5.) Petitioner in opposition argues that "there is no bright line rule about how much

9  delay is unreasonable" and provides several reasons he believes justify his filing delay.

10  (ECF No. 41 at 11.) As best the Court can glean from Petitioner's opposition, Petitioner

11  contends that good cause exists for his 138-day delay for the following reasons: (1) his

12  prison legal assistant ("PLA") "drafted and submitted a cert petition to SCOTUS on behalf

13  of [P]etitioner after the court of appeal denial," which "took a considerable amount of time"

14  (*id.*); (2) his PLA was waiting for "case documents [and] discovery" from Petitioner's plea

15  counsel (*see id.* at 21; 27); (3) his PLA spent "a considerable amount of time . . .

16  ascertaining/assessing/drafting/researching" support for a request for certificate of

17  probable cause, which he filed on November 27, 2018 (*id.* at 24); (4) his PLA "was

18  diligently continuing to conduct legal research" (*id.* at 25); and (5) his PLA was seeking

19  counsel for Petitioner (*id.* at 26). Respondents did not file a reply to Petitioner's opposition

20  and therefore provide no rebuttal to Petitioner's justifications.

21    Petitioner's 138-day delay is well-beyond the 30- to 60-day benchmark district

22  courts applying California law accept. *See, e.g.*, *Espericueta v. Lackner*, No. 1:14–cv–

23  00342–SKO–HC, 2014 WL 5781399, at *5 (E.D. Cal. Nov. 4, 2014) ("The delay of 123

24  days was a substantial delay that would be unreasonable if unsupported by a showing of

25  good cause."). There is nothing before the Court that indicates whether the California

26  ///

27  ///

28  ///

Supreme Court expressly determined whether the petition was timely.[8]  Nevertheless, the Court need not determine whether Petitioner has shown good cause for his delay.  Even if Petitioner is entitled to 138-days of gap-tolling between the court of appeal's denial and his filing of a petition in the California Supreme Court, thus affording Petitioner with the maximum amount of statutory tolling even arguably available, the Original Petition would nonetheless be untimely.  When the California Supreme Court denied the petition before it on July 17, 2019, 63 days remained in the one-year limitations period.  Petitioner's federal habeas petition was therefore due on September 18, 2019, even allowing for all possible statutory tolling.  Petitioner, however, constructively filed the Original Petition on September 20, 2019, two days after the limitations period expired even by that measure. Therefore, Petitioner's Original Petition is untimely unless he is entitled to sufficient equitable tolling.

### 3.   Equitable Tolling

#### a.   Legal Standard

AEDPA's one-year statute of limitations is subject to equitable tolling in appropriate cases.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  The purpose of the equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court."  *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008) (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004)).  The "exercise of a court's equity powers must be made on a case-by-case basis," and decisions are "highly fact-dependent."  *Holland*, 560 U.S. at 649–50 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964)).  Nevertheless, "the threshold necessary to trigger equitable tolling [under

///

---

[8]      The only record before the Court evidencing the California Supreme Court's denial of Petitioner's state habeas petition is a printing of the Supreme Court's docket.  An entry on July 17, 2019, provides: "Petition for writ of habeas corpus denied."  (ECF No. 15-12 at 1.)

AEDPA] is very high, lest the exceptions swallow the rule." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002)).

To qualify for equitable tolling, a petitioner must demonstrate: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace*, 544 U.S. at 418). The "extraordinary circumstance" requirement "suggests that an external force must cause the untimeliness, rather than . . . merely oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). A petitioner bears the burden of establishing both elements, and failure to prove either element disqualifies the petitioner for equitable tolling. *See Pace*, 544 U.S. at 418–19. Further, if equitable tolling is warranted, "the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015) (citing *Gibbs v. Legrand*, 767 F.3d 879, 891–92 (9th Cir. 2014)).

Additionally, the petitioner must demonstrate a causal relationship between the extraordinary circumstance and his untimely filing. *Spitsyn*, 345 F.3d at 799. In other words, "an equitable tolling analysis requires more than adding up days during the AEDPA limitations period when a petitioner was unable to work on his petition for reasons beyond his control. It also requires considering whether the period of disability *caused* the petitioner's late filing." *Harnish v. Martell*, Case No. 2:18-cv-03600-RGK-KES, 2019 WL 994209, at *10 (C.D. Cal. Jan. 25, 2019), *adopted by* 2019 WL 1405542 (C.D. Cal. Mar. 28, 2019); *see also Ramirez*, 571 F.3d at 997 ("The petitioner must additionally show that 'the extraordinary circumstances were the cause of his untimeliness' and that the 'extraordinary circumstances ma[de] it impossible to file a petition on time." (alteration in

///

19-cv-01964-LAB-JLB

original) (first quoting *Spitsyn*, 345 F.3d at 799; then quoting *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006))).

          b.   <u>Discussion</u>

Respondents identify that Petitioner is mentally ill but briefly argue that he is not entitled to any equitable tolling because "his ability to file two habeas petitions and a supplemental habeas petition in the state courts during the one-year limitations period undercuts any claim that his mental illness was the but-for cause of his filing delay or that he was sufficiently diligent." (ECF No. 31-1 at 6.) Respondents make no other argument concerning equitable tolling.

In his opposition, Petitioner argues that he is entitled to equitable tolling "because he has pursued his rights diligently," but "multiple extraordinary circumstances stood in his way" and prevented his timely filing. (ECF No. 41 at 13.) Petitioner offers a list of twenty bases for a finding of extraordinary circumstances (*id.* at 18–19) and scatters further bases and explanations throughout his disjointed opposition. The Court categorizes Petitioner's bases for extraordinary circumstances into three main arguments: (1) Petitioner is "gravely mentally-disabled," and his mental impairments rendered him unable to understand the need to timely file or even draft a petition (*e.g.*, *id.* at 7–8, 18, 34, 37); (2) Petitioner's hospitalization at CMF from August 30, 2017, through June 24, 2018, prevented him from preparing and filing a habeas petition (*e.g.*, *id.* at 8, 10, 15–16, 18, 38); and (3) various impediments at MCSP, such as temporary restrictions from the law library, placement on suicide watch, delays in receiving files from his former counsel, and attempts to seek post-conviction counsel contributed to his delay in filing his California Supreme Court petition (*e.g.*, *id.* at 10, 19, 21, 26–27, 30–32).

For the reasons discussed below, the Court finds that Petitioner's hospitalization at CMF and mental illness during that time constitute extraordinary circumstances warranting equitable tolling.

///

///

19-cv-01964-LAB-JLB

i.   *Summary of Relevant Evidence Concerning Petitioner's Hospitalization and Mental Illness*

Medical records included in the state court lodgments indicate that Petitioner had been diagnosed with schizoaffective disorder, acute schizophrenia, paranoid schizophrenia, bipolar disorder, anxiety, and depression and was prescribed psychotropic medications during the limitations period.  (ECF No. 15-11 at 99; 101–02, 108, 115.) Medical records also confirm that from August 30, 2017, to June 24, 2018, Petitioner was hospitalized at CMF for his mental illness.  (ECF Nos. 15-9 at 26; 15-11 at 105.)  Petitioner does not describe in his opposition or otherwise his circumstances while hospitalized, such as the level of medical care required or extent to which he was restrained to a hospital bed.[9] However, various medical records shed light on the circumstances surrounding his hospitalization.

Treatment notes from his initial "72[-]hour Treatment Team conference" at CMF on August 31, 2017, provide the following:

> [Patient] appeared disheveled, dressed in a safety smock, [and] CDCR issued sneakers.  [Patient]'s hair is long, think [sic] and in his face.  [Patient]'s eye contact was intense and gazed in one place for long periods of time. [Patient]'s speech was delayed and he stuttered occasionally.  [Patient] would at times in the interview throw his head back in the chair in an aggressive and quick manner.  [Patient]'s thought process was disorganized with delusional thoughts regarding demons, illuminati, clairvoyance, [and] the double meaning of words.  [Patient] was guarded and paranoid refusing to have a full medical exam by the nurse practitioner. . . .   [Patient] denied SI/HI, yet endorsed AH regarding demons.  [Patient] was not able to give detailed

---

[9]   The CDCR website provides that CMF is a "medium security medical facility" and "the majority of inmate-patients [there] reside in an outpatient setting and receive health care . . . [at] outpatient clinics."   However, those inmates who "require additional nursing care may be housed in the Outpatient Housing Unit" and those "who require 24-hour nursing care are housed in a licensed medical correctional treatment center (CTC)."  CMF also operates a 400-bed inpatient psychiatric CTC and a 50-bed mental health crisis bed CTC.  *California Medical Facility (CMF), Details & History*, https://www.cdcr. ca.gov/facility-locator/cmf/.

information about his psychiatric history. [Patient] has moderate insight, fully discussing and understanding that he has a mental illness with AH, and with poor judgment. Below is part of [Patient]'s admission interview that evidences his bizarre, psychotic thinking process and disorganization that makes a true suicidal risk evaluation difficult.

"You ever realize that words have two meanings? There are meanings behind things we don't know[.] [W]e get the gist of some things, but there are some words that are bad that some people should not say. There's scary stuff I'm learning about, my voices are demons. My perspective is that they're illuminati, the American government, they killed refugees." He later discussed Freud, and the bible, and stated[,] "My voices tell me the bible is full of lies." Patient appeared religiously preoccupied[] and discussed delusional thought processes. Patient stated[,] "I think I'm developing some clairvoyance, like I am having an understanding of people, the animalistic side of things."

(ECF No. 15-11 at 105.)

On October 17, 2017, less than two months after Petitioner was admitted to CMF, an Administrative Law Judge ("ALJ") granted a petition authorizing the involuntary administration of psychiatric medication to Petitioner. (*Id.* at 84.) The ALJ found that Petitioner was "[g]ravely [d]isabled, and lack[ed] the capacity to consent to or refuse treatment with psychiatric medications" and allowed Petitioner to "be involuntarily administered psychiatric medication" for a period of one year, from October 17, 2017, to October 17, 2018. (*Id.* at 85–86.)

Treatment notes from several months later provide that Petitioner was discharged from CMF's Mental Health Crisis Bed Unit ("MHCB") to the Intermediate Care Facility ("ICF") on March 13, 2018. (ECF No. 15-11 at 112.) These notes also comment on Petitioner's condition when he first arrived at CMF and subsequent progress, stating:

Mr. Torres was extremely psychotic and delusional when he first arrived on this unit. He had only been in CDCR reception before he was sent to the MHC[B]. Mr. Torres had received his life sentence a few weeks before arriving on the unit. It appeared that he was still trying to understand and accept that he has a life sentence. He has not been to the mai[n]line yet. The circumstances of his crime and life sentence has e[x]acerbated his mental

> health and overall functioning as a result he will benefit from more treatment, helping him adjust to prison life.  Although many of Mr. Torres['] acute psychotic symptoms have resolved he still needs to be redirected at times.  He can still be delusional and paranoid at times.  The delusions may last through out his life as they are fixed.  He has been started on Clozapine which will continue to be monitored while in intermediate.  He is currently on a PC 2602 which will ensure his medication compliance.

(*Id.*)  Additional treatment notes from March 13, 2018, state that, despite recently "bit[ting] his arm hard enough to make it bleed" and "smear[ing] blood on the walls of his cell," Petitioner's "psychotic symptoms [had] decreased."  (*Id.* at 109.)

Notes concerning Petitioner's discharge from CMF and transfer to MCSP provide that Petitioner had "achieved stabilization of the symptoms precipitating his ICF admission."  (ECF No. 15-9 at 26.)  Although Petitioner no longer required care at CMF, his initial assessment with a MCSP physician on July 5, 2018, provides that Petitioner was still very much delusional.  When asked why he was suicidal, he stated, "Because I got LWOP and rape charges; someone ended up dead, I think the police killed her, you know the cops are dirty."  (ECF No. 15-11 at 100.)  When asked if Petitioner thought that police fabricated the evidence for his murder charge, he stated,

> Yes, I was being followed by either FBI, CIA or DEA, so I broke into this house[.]  [T]he guy got scared and came with his hands up and went outside[.]  I locked the door and sat on the couch . . . .  I heard the glass broke so I thought the FBI was coming in[.]  [T]his young woman pulled my pants down and started filling me up, the older woman I had a knife to her neck but I didn't kill her[.]  [T]hen the police came in did something to the old woman who died[.]  I am in prison for something I didn't do.

(*Id.*)

Petitioner's physicians sought to renew his involuntary medication order shortly after his transfer to MCSP in a petition dated August 10, 2018.  (ECF No. 15-9 at 20.)  In a declaration attached the petition, a physician provided that an "additional basis should be added to the existing court order" based on the following "new acts or behaviors" displayed by Petitioner in the last twelve months:

///

1. Ongoing delusional thought process based on paranoia, fear of being followed or poisoned by FBI or CIA.
2. Ongoing depressed mood and anhedonia apathy and hopelessness which can be a precursor to his suicide attempt . . . .
3. Ongoing fearful attitudes of worsening of medical issues . . . .
4. He still believes that staff members are "Smanthers-Aliens" . . . .
5. Experiencing consistent command auditory hallucinations, when asked he denied hearing those voices[,] as he believes because of verbalizing those experiences that FBI and CIA are after him. However, his behavior is consistent as preoccupied due to internal stimuli.
6. History of biting and self-inflicting injuries when in distress.
7. Multiple RVR's in[ the] last 12 months.

(*Id.* at 21.)

In the months after his transfer to MCSP, Petitioner continued to experience symptoms from his mental illness. An examination of Petitioner on October 17, 2018, reported that Petitioner was continuing to have "paranoid delusions" with an "exacerbation of[] paranoid themes" including "[bizarre] . . . religious and sexual themes." (ECF No. 15-11 at 115.)

### ii.   *Hospitalization as a Basis for Equitable Tolling*

Petitioner argues that the statute of limitations was equitably tolled while he was hospitalized at CMF from August 30, 2017, to June 24, 2018. During this time, Petitioner asserts that he was suffering from "debilitating mental illnesses" and was "committed" to a "[c]risis bed unit[]." (ECF No. 41 at 6, 18.) Petitioner further asserts that he was "gravely mentally-disabled . . . by reason of multiple . . . psychiatric [and] psychological mental disorders" and was "involuntarily" and "psychotropically medicated daily [and] nightly." (*Id.* at 7, 8.) Petitioner contends that "throughout [his] hospitalization" at CMF he was "unable to timely prepare, present, and properly filed the needed [h]abeas [p]etitions." (*Id.* at 34, 40.) Additionally, Petitioner claims that while at CMF, he had no access to a prison law library, court forms, court address, or legal staff/assistance, and it was not until he was transferred to MCSP that he gained "some access to a prison law library and persons who would help him file his first state habeas petition." (*Id.* at 8, 10, 16.) Respondents provide
///

no argument concerning Petitioner's hospitalization as an extraordinary circumstance warranting equitable tolling.

The Court finds that Petitioner's hospitalization at CMF from August 20, 2017, to June 24, 2018, constitutes an extraordinary circumstance under the equitable tolling doctrine. *See Hernandez v. Paramo*, No. 13–CV–1217 BEN (BLM), 2014 WL 1203139, at *7 (S.D. Cal. Mar. 24, 2014) (finding that admittance to a hospital to receive psychiatric care and psychotropic medication constituted extraordinary circumstances for purposes of equitable tolling); *see also Harnish*, 2019 WL 994209, at *7 ("Hospitalizations, physical incapacity, or mental illness may amount to an extraordinary circumstance beyond a petitioner's control giving rise to equitable tolling."). As described above, Petitioner's medical records evidence that he was severely psychotic and delusional while at CMF, necessitating hospitalization in a crisis bed unit for nearly seven months and then an intermediate care facility for approximately three months. (*See* ECF Nos. 15-9 at 26; 15-11 at 112.) Moreover, Petitioner provides that he had no "readily-available access to any legal/assistance while at CMF." (ECF No. 41 at 8, 16.) The Court acknowledges that a lack of legal assistance is generally insufficient to justify tolling the statute of limitations. *See Baker v. Cal. Dep't of Corr.*, 484 F. App'x 130, 131 (9th Cir. 2012) ("Low literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition."). However, Petitioner's lack of legal assistance in combination with his hospitalization for severe psychosis create an extraordinary circumstance.

In addition to showing that his hospitalization prevented him from filing the Original Petition, Petitioner must demonstrate that he was diligent in pursuing his rights. The diligence required to warrant equitable tolling is not "maximum feasible diligence" but rather "reasonable diligence." *Holland*, 560 U.S. at 653. Petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in the federal court." *Smith v. Davis*, 953 F.3d 582, 598–99 (9th

Cir. 2020).  In his opposition, Petitioner argues that soon after he arrived at MCSP, he found his PLA, who helped him begin the state habeas process.  (*See* ECF No. 41 at 38.) Petitioner asserts that his PLA "did not sit idle," filing his first state habeas petition on August 1, 2018, a little more than one month after Petitioner's arrival.  (*Id.* at 16.) Petitioner contends that the "August 1st filing date evidences the fact that there was no idle time in seeking habeas/court relief" after his discharge from CMF.  (*Id.*; *see id.* at 20.)

The Court finds that Petitioner has adequately demonstrated that he was reasonably diligent in pursuing habeas relief.  Petitioner was hospitalized at CMF beginning on August 30, 2017, before the one-year limitations period began to run on October 3, 2017, so Petitioner need not demonstrate diligence before his hospitalization.  As to Petitioner's diligence during his hospitalization, Petitioner's hospitalization was beyond his control, and no amount of effort by Petitioner could have secured an earlier discharge.  This is not the typical case where Petitioner could be expected to demonstrate diligence by attempting to obviate the impediment constituting the extraordinary circumstance.  *See Smith*, 953 F.3d at 599 ("In determining whether reasonable diligence was exercised courts shall 'consider the petitioner's overall level of care and caution in light of his or her particular circumstances.'" (quoting *Doe v. Bugsby*, 661 F.3d 1011, 1013 (9th Cir. 2011))).  After Petitioner was discharged from CMF and transferred to MCSP on June 24, 2018, he was able to file his first state habeas petition with his PLA's assistance within about five weeks. Thereafter, the record shows that Petitioner worked on his state habeas petitions with "some regularity," up until the filing of his federal habeas petition on September 20, 2019. *See id.* at 601 ("[R]easonable diligence seemingly requires the petitioner to work on his petition with some regularity—as permitted by his circumstances—until he files it in the district court.").

Finally, Petitioner must demonstrate a causal relationship between his hospitalization and his untimely filing of the Original Petition.  As to causation, Petitioner argues only that his "mental illnesses [and] hospitalization" were the "true sources of [his] . . . delay."  (ECF No. 41 at 38.)  Despite a lack of argument concerning causation, the

Court is able to find that Petitioner's hospitalization at CMF caused his untimely filing. By the time Petitioner was discharged from CMF, the statute of limitations had run for 264 days, leaving only a little more than three months of the one-year period for Petitioner to exhaust his claims in state court and file a federal petition. Although it may not have been *literally* impossible for Petitioner to file his federal petition in these remaining three months, taking into consideration statutory tolling, the equitable tolling doctrine's causation requirement "does not impose a rigid 'impossibility' standard on litigants, and especially not 'pro se prisoner litigants—would have already faced an unusual obstacle beyond their control during the AEDPA limitation period.'" *Smith*, 953 F.3d at 600. The instant case is distinguishable from cases where a petitioner cannot demonstrate causation because the extraordinary circumstance occurred early in the limitations period or was short in duration. For example, the Ninth Circuit in *Allen v. Lewis* found that the petitioner could not demonstrate causation between the extraordinary circumstance and the late federal petition when the extraordinary circumstance—the loss of his habeas materials for 27 days due to a prison transfer—occurred early in the limitations period and was short in duration. 255 F.3d 798 (9th Cir. 2001). The *Allen* court reasoned:

> It will normally be much more difficult for a prisoner to demonstrate causation where he encounters the "extraordinary circumstances" in the beginning or middle of the limitations period than where he encounters them at the end of the limitations period. This is the case because, if the prisoner is diligently pursuing his habeas petition, the one-year limitations period will ordinarily give him ample opportunity to overcome such early obstacles. . . .
>
> . . . .
>
> In this case, Allen produced no evidence demonstrating that the loss of access to his habeas materials for 27 days due to his prison transfer made it impossible for him to file his federal habeas petition 16 days earlier. . . . [T]he transfer began a mere one month into the limitations period. This left Allen with the better part of the limitations period in which he could have filed his federal petition uninhibited by the prison transfer. It is clear that any effect that prison transfer had on the preparation of his habeas materials was dissipated during these many months.

*Id.* at 800–01.  In contrast, the extraordinary circumstance here existed even before the limitations period began and lasted for 264 days of the one-year period.  Given that limited time remained in the limitations period after Petitioner was discharged from CMF, the Court concludes that but-for Petitioner's hospitalization, the Original Petition would have been timely.  *Cf. Hill v. Tilton*, No. 1:08 CV 0092 OWW WMW HC, 2008 WL 4937009, at *5 (E.D. Cal. Nov. 17, 2008) (finding that the petitioner failed to show that his placement in administrative segregation without his legal materials was the but-for cause of his untimeliness when six months remained in the limitations period after he gained access to his materials).  It is the length of the extraordinary circumstance here that allows the Court to find causation between the extraordinary circumstance and delay in filing.

For the foregoing reasons, the Court finds that Petitioner was diligent in pursuing his rights but his hospitalization at CMF was an extraordinary circumstance that prevented his timely filing of the Original Petition.  Thus, Petitioner is entitled to equitable tolling for the 264 days he was hospitalized at CMF after the limitations period began.

### iii.   *Mental Illness as a Basis for Equitable Tolling*

Petitioner also argues that his mental illness constitutes an independent ground warranting equitable tolling.  Petitioner asserts that "his mental state rendered him unable to personally prepare a habeas petition," and, "through no fault of his own, lacked reasonable available access to legal assistance" while at CMF.  (ECF No. 41 at 18.)  Petitioner contends that "he has no concept of time filing deadlines," and his PLA had to draft and submit his state court and federal petitions "all for him on his behalf."  (*Id.*)  Throughout the opposition, which is clearly written by Petitioner's PLA, Petitioner emphasizes that he "did not draft, prepare, or submit for filing any of his state [and] federal habeas case matter documents.  His prison legal assistant did."  (*Id.* at 37.)

In appropriate circumstances, a petitioner's mental impairment may represent an extraordinary circumstance warranting equitable tolling for the period he was incompetent.  *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003).  The Ninth Circuit in *Bills v. Clark* ///

set forth a two-part test to determine whether equitable tolling applies in cases where petitioner suffers from a mental impairment:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either[:]
>
> > (a) [the] petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) [the] petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

628 F.3d 1092, 1099–100 (9th Cir. 2010) (internal citations omitted) (quoting *Holland*, 560 U.S. at 648). "The mental impairment must be so debilitating that it is the but-for cause of the delay, and even in cases of debilitating impairment the petitioner must still demonstrate diligence." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (citing *Bills*, 628 F.3d at 1100). The *Bills* test, however, "is not 'a mechanical rule'; rather, equitable tolling determinations require 'a flexibl[e], case-by-case approach.'" *Forbess v. Franke*, 749 F.3d 837, 840 (9th Cir. 2014) (quoting *Bills*, 628 F.3d at 1096).

Here, Petitioner has made a non-frivolous showing that he suffered from severe mental illness and was in fact mentally impaired at minimum while he was hospitalized at CMF. As detailed above, during his hospitalization, and even in the months after his transfer to MCSP, medical records demonstrate that Petitioner was at times psychotic and delusional. For example, Petitioner believed that the voices in his head were the illuminati or the government, that staff members were aliens, and that the CIA, FBI, or DEA was attempting to poison him. Treatment notes from Petitioner's initial evaluation at MCSP further provide that Petitioner believed that the victim whose murder he was convicted of

///

was in fact killed by police and that the police had fabricated the evidence used against him. (*See* ECF No. 15-11 at 100.)

The Court finds the facts of the instant case to be somewhat similar to those in *Forbess v. Franke*, a case cited by Petitioner in his opposition. (ECF No. 41 at 12, 61.)  In *Forbess*, the Ninth Circuit held that equitable tolling was warranted due to Forbess's mental illness, finding that Forbess "suffered from delusions so severe that he was unable to understand the need to timely file his petition, and the unique nature of those delusions made it impossible for him to timely file."  749 F.3d at 838.  During a portion of the AEDPA limitations period, Forbess "believed he was working undercover with the FBI, and his trial was a 'sham' orchestrated to lure his ex-wife out of hiding and arrest her for being part of an extensive drug distribution operation."  *Id.* at 840 (quoting *Forbess v. Mills*, Civil No. 3:08–cv–01261–AC, 2012 WL 4324912, at *5 (D. Or. Aug. 17, 2012)). Because Forbess "genuinely believed the FBI would release him once they arrested his ex-wife," the Ninth Circuit accepted the district court's finding that he "could not rationally understand the need to timely file his habeas petition."  *Id.*  The *Forbess* court, however, disagreed with the district court as to whether Forbess had shown that his "mental illness was not the but-for cause of his delay," the second prong of the *Bills* test.  *Id.* at 841.  The Ninth Circuit found for Forbess and ruled that the district court had applied "an overly-rigid interpretation of the but-for test set out in *Bills*, and did not consider the totality of the circumstances before it—especially the peculiar nature of Forbess's mental illness."  *Id.*

Although facts of the instant case are not completely analogous to those in *Forbess*, the Court finds that *Forbess* provides guidance as to the level of mental illness warranting equitable tolling under *Bills*.  Considering *Forbess* as a benchmark, the Court finds that Petitioner's delusions while hospitalized at CMF and after his transfer to MCSP were of the nature that rendered him unable to rationally understand the need to timely file a habeas petition or unable to personally prepare a habeas petition.  Although Petitioner seemingly

///

///

understood during this time that his incarceration was not a sham,[10] unlike Forbess, he was at times, undoubtedly delusional and living in an alternate reality.

Additionally, the Court finds that Petitioner has shown "diligence in pursing [his] claims to the extent he could understand him," but the severity of his mental illness while hospitalized "made it impossible to meet the filing deadline, including reasonably available access to assistance." *Bills*, 628 F.3d at 1093.  As previously addressed, it was not until Petitioner was transferred to MCSP on June 24, 2018, that he began to receive "some access to a prison law library and persons able to help him file his [first] state habeas petition." (ECF No. 41 at 8, 16.)  By the time that Petitioner met his PLA, a little more than three months remained in the limitations period.  But, with his PLA's assistance, Petitioner was able to file his first state habeas petition a little over a month after his discharge on August 1, 2018.  Even after his transfer to MCSP, Petitioner maintains, by way of his PLA, that he was "living and existing in a 'fantasy' existence not the 'real world reality' of others." (*Id.* at 16.)

As mentioned, Respondents make a single argument concerning whether Petitioner is entitled to equitable tolling for his mental illness.  Respondents maintain that Petitioner cannot establish that his illness meets the second *Bills* prong because he was able to file "two habeas petitions and a supplemental habeas petition in the state courts during the one-year limitations period." (ECF No. 31-1 at 6.)  Respondents ignore, however, the fact that Petitioner was only able to file his first state habeas petition after he was transferred to MCSP and gained "reasonably available access to assistance" in the form of his PLA.  The opposition makes clear that Petitioner himself neither helped prepare nor filed any of his state habeas petitions. (*See* ECF No. 41 at 41 ("It is important to note that Petitioner Torres

---

[10]     Petitioner, however, did at one point during his initial evaluation at MCSP ask whether his physician could "call [his] parents and help them to get [him] out of [p]rison," calling into question Petitioner's beliefs concerning the reality of his incarceration and life sentence. (ECF No. 15-11 at 100.)

did not initiate the drafting and submissions and filings in the State [and] Federal habeas [p]etition case matters.  His prison legal assistant, CW, did and still is now."); *see also id.* 13, 37–38.)  Petitioner's filing of his first state habeas petition and subsequent petitions once assistance was made available to him does not break the causation between his mental illness and the filing delay.  Applying the "flexible, totality-of-the-circumstances [approach] that *Bills* requires," the Court finds that Petitioner has satisfied both prongs of the *Bills* test and his mental illness, at least during his hospitalization, constitutes an extraordinary circumstance that warrants equitable tolling.

### 4.   Conclusion

Petitioner is entitled to a minimum of 98 days of statutory tolling (*see supra* pp. 11–16) and 264 days of equitable tolling.  After applying 362 days of equitable and statutory tolling, the Original Petition was due no later than September 30, 2019.  Petitioner constructively filed the Original Petition on September 20, 2019.  Accordingly, the Original Petition was timely.  Therefore, the Court **RECOMMENDS** that Respondents' Motion to Dismiss the Amended Petition on that grounds that the Original Petition is untimely be **DENIED**.

## IV.   RESPONDENTS' MOTION TO DISMISS AMENDED PETITION AS MIXED AND PETITIONER'S MOTION FOR STAY AND ABEYANCE

As stated above, on February 21, 2020, Petitioner filed the Amended Petition, wherein he added an eighth, unexhausted claim.  (ECF No. 21 at 13.)  In their Motion to Dismiss, Respondents move to dismiss the Amended Petition on the grounds that it is a mixed petition and Petitioner had not requested a stay.  (ECF No. 31-1 at 7–8.)  When Respondents moved to dismiss the Amended Petition, Petitioner had not requested a stay.

Petitioner now moves for a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). (ECF No. 35.)  Additionally, Petitioner filed a letter with the Court on November 30, 2020, which the Court construes as a second Motion for Stay and Abeyance.  (*See* ECF No. 49.)

In light of Petitioner's Motions for Stay and Abeyance, the Court **RECOMMENDS** that the District Court **DENY as moot** Respondents' Motion to Dismiss on the grounds

that the Amended Petition is a mixed petition.  Further, for the reasons stated below, the Court **RECOMMENDS** that the District Court **GRANT** Petitioner's Motions for Stay and Abeyance.

## A.   LEGAL STANDARD

Habeas petitioners who wish to challenge either their state court conviction, or the length of their confinement, must first exhaust state judicial remedies.   28 U.S.C. § 2254(b)(1)(A).  This exhaustion "requirement is 'grounded in principles of comity' as it gives states 'the first opportunity to address and correct alleged violations of state prisoner's federal rights.'"   *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).   Courts consider habeas petitions containing exhausted and unexhausted claims as "mixed" petitions.  *Rose v. Lundy*, 455 U.S. 509, 510 (1982).  Prior to the enactment of AEDPA, district courts were required to dismiss mixed petitions, "leaving the prisoner with the choice of returning to state court to exhaust his claims or amending or resubmitting the habeas petition to present only exhausted claims to the district court."  *Id.*  The imposition of AEDPA's one-year statute of limitations on federal habeas petitions limited the ability of petitioners whose mixed federal petitions had been dismissed to exhaust viable claims and return to federal court before being time-barred.  *See* 28 U.S.C. § 2244(d)(1); *King v. Ryan*, 564 F.3d 1133, 1138 (9th Cir. 2009).  Accordingly, the stay and abeyance procedure was developed as an alternative to dismissing a mixed petition, enabling petitioners to present unexhausted claims in state court "without losing [their] right to federal habeas review due to [AEDPA's] one-year statute of limitations."  *Wooten*, 540 F.3d at 1023.

Pursuant to *Rhines v. Weber*, a district court has discretion to stay a mixed federal habeas petition while the petitioner returns to state court to exhaust the unexhausted claims without losing his right to federal habeas review.  544 U.S. 269, 273–78 (2005).  Once the petitioner exhausts state court remedies for all claims, the district court lifts the stay and allows the petitioner to proceed in federal court on all claims.  *See id.* at 276–77.  The "stay and abeyance" procedure under *Rhines*, however, is available only in "limited

circumstances" when the following three conditions are met: (1) the unexhausted claims potentially are not plainly meritless; (2) the petitioner demonstrates "good cause" for failing to first exhaust his claims in state court; and (3) there is no indication that petitioner intentionally engaged in dilatory litigation tactics. *Id.* at 277–78.

## B. DISCUSSION

### 1. Whether Claim 8 is Plainly Meritless

The Court first addresses whether Petitioner's unexhausted[11] claim is plainly meritless. Petitioner pleads an eighth, unexhausted claim ("Claim 8") in his Amended Petition as follows:

---

[11] It is not entirely clear to the Court whether relief would be available to Petitioner if he returned to state court to exhaust Claim 8. The exhaustion requirement is satisfied, "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law." *Gray v. Netherland*, 518 U.S. 152, 161; *see also Engle v. Isaac*, 456 U.S. 107, 125–26 n.28 (1982) (noting that the exhaustion requirement applies "only to remedies still available at the time of the federal petition"). In denying Petitioner's habeas petition, the court of appeal stated:

> Torres is not entitled to habeas corpus relief. His petition is procedurally barred because he did not appeal and obtain a certificate of probable cause to challenge the validity of his guilty plea. (Pen. Code, § 1237.5.) "A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus." (*In re Chavez* (2003) 30 Cal.4th 643, 651.)

(ECF No. 15-10 at 2.) However, the court of appeal also addressed the merits of the petition, finding that Petitioner had failed to state a prima facie case for relief. (*Id.*) Additionally, the superior court's two orders denying Petitioner's first and second habeas petitions filed in the superior court are silent as to any procedural bar. (*See* ECF Nos. 15-6 at 2–3; 15-8 at 1–2.)

The Court also recognizes that Petitioner was convicted in 2017, and any claim now presented by Petitioner to the California Supreme Court could be time-barred. However, as stated, there are no specific time-constraints for filing habeas corpus petitions in

> Defense counsel failed to investigate, develop, [and] present available important evidence of [Petitioner]'s cannabis-induced psychosis, inter alia. Defense counsel should have presented forensic expert testimony as to how cannabis use actually affects a documented gravely mentally-disabled person particularly in terms of psychosis.   This violated [Petitioner]'s right to counsel, as guaranteed by Amend[ment] 6 to the U.S. Constitution.   See Wiggins v. Smith, 539 510 (2003).

(ECF No. 21 at 45.)   Petitioner argues that Claim 8 is not plainly meritless because a "cannabis claim has merit in professional psychological/psychiatric circles" and "because it fundamentally pertains to [his] defense." (ECF No. 35-2 at 2.)   Petitioner further argues that "[p]lea counsel had the discretion of raising the cannabis-induced psychosis [defense] but declined to do so."   (ECF No. 35 at 5.)   In a declaration, Petitioner attests that "[t]ranscripts from 2015 show [his] parents asking for help from the court" regarding Petitioner's "habitual cannabis consumption."  (ECF No. 35-2 at 2.)

In their opposition, Respondents argue that Petitioner's Claim 8 is plainly meritless because it is barred by *Tollett v. Henderson*, 411 U.S. 258 (1973).  (ECF No. 42 at 3.)  The Supreme Court in *Tollett* held that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  411 U.S. at 267.  Thus, "[a]s a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." *Hudson v. Moran*, 760 F.2d 1027, 1029–30 (9th Cir. 1985).

///

---

California state courts.   Instead, California courts "appl[y] a general 'reasonableness' standard" to judge whether a habeas petition is timely filed."   *In re Reno*, 55 Cal. 4th 428, 460 (2012) (quoting *Carey*, 536 U.S. at 222).   Further, even if a claim is "substantial[ly] delayed," a California court "will nevertheless consider it on its merits if the petitioner can demonstrate good cause for the delay."   *Id.* at 461 (emphasis omitted).

Nevertheless, *Tollett* does not bar all post-conviction claims alleging pre-plea violations. A petitioner who pleaded guilty may nonetheless "attack the voluntary and intelligent character of [his] guilty plea." *Tollett*, 411 U.S. at 267. Under *Tollett*, "freestanding constitutional claims are unavailable to habeas petitioners who plead guilty," but "claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Mahrt v. Beard*, 849 F.3d 1164, 1170–71 (9th Cir. 2017).

Petitioner alleges in Claim 8 that his counsel failed to "investigate, develop, [and] present" evidence and expert testimony concerning a "cannabis-induced psychosis" defense. (ECF No. 21 at 45.) Because Petitioner pleaded guilty rather than going to trial, his allegations that his counsel failed to develop evidence or present expert testimony appear inapplicable to the circumstances of his case. However, when reading Claim 8 in conjunction with Petitioner's briefings, it is clear that Petitioner views Claim 8 as a pre-plea ineffective assistance of counsel claim. In his Motion for Stay and Abeyance, Petitioner, referring to Claim 8, asserts that "serious pretrial constitutional errors . . . prejudiced him and were deciding factors to his coerced acceptance of the plea agreement." (ECF No. 35 at 3.) Additionally, Petitioner in his reply argues that Claim 8 is not barred by *Tollett* because his counsel's advice "to plead guilty was deficient [and] coerced by any reasonable measure." (ECF No. 45 at 3.) Accordingly, the Court liberally construes Claim 8 as an allegation that Petitioner's representation was ineffective because his counsel failed to advise him of the possibility of a "cannabis-induced psychosis" defense.

Here, if Petitioner's counsel failed to advise him that certain defenses would be available to him at trial, that may have prevented Petitioner from making an informed choice of whether to plead guilty. The Court therefore finds that *Tollett* does not bar Claim 8. Further, the Court cannot determine that the claim is otherwise plainly meritless on the limited pre-plea record before the Court.

///

19-cv-01964-LAB-JLB

## 2.    Good Cause and Evidence of Dilatory Litigation Tactics

"The good cause element is the equitable component of the *Rhines* test [and] ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court." *Blake v. Baker*, 745 F.3d at 977, 982 (9th Cir. 2014).   Neither the Supreme Court nor the Ninth Circuit have established a precise definition for good cause under *Rhines*.  *Id.* at 980; *see also Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017) ("The caselaw concerning what constitutes 'good cause' under *Rhines* has not been developed in great detail.").   However, the Ninth Circuit held in *Dixon v. Baker* that good cause exists for a petitioner's failure to exhaust claims of ineffective assistance of trial counsel if the petitioner was without counsel during state post-conviction proceedings.  847 F.3d at 720.  The *Dixon* court reasoned that:

> A [p]etitioner who is without counsel in state post[-]conviction proceedings cannot be expected to understand the technical requirements of exhaustion and should not be denied the opportunity to exhaust a potentially meritorious claim simply because he lacked counsel.
>
> . . . .
>
> We recognize, of course, that many state post-conviction proceedings are conducted pro se.  For this group of federal habeas petitioners, the first element of the *Rhines* test can easily be established to the extent that they were without counsel.  But the other two elements of the test—claim plausibility and the absence of abusive tactics—will weed out plainly meritless claims and will help ensure that a dilatory litigant's failure to exhaust his claims in state court will not be condoned.

*Id.* at 721–22.

Here, Petitioner seeks to add an additional claim of ineffective assistance counsel, and the record demonstrates that Petitioner proceeded *pro se* during his post-conviction proceedings.  Petitioner therefore meets the threshold for good cause as articulated in *Dixon*.  Petitioner makes no argument that good cause exists for a *Rhines* stay because he was without counsel during post-conviction proceedings.  Instead, he focuses his good cause argument on a contention that his "cannabis-induced psychosis claim did not become

evident until December 2019" when he "discovered" it on "CBS' morning program." (ECF No. 35 at 5; 35-2 at 1.)   Nevertheless, under *Dixon*, Petitioner is entitled to a finding of good cause.   *See Cage v. Montgomery*, 812 F. App'x 679, 680 (9th Cir. 2020) ("[T]he district court abused its discretion by concluding that [petitioner] failed to establish good cause for a stay. . . .   As relevant here, the good cause standard is satisfied when a petitioner lacked the effective assistance of counsel during state post[-]conviction review proceedings."); *Bogarin v. Hatton*, No. 16cv2793-BTM, 2017 WL 4857009 at *3 (S.D. Cal. Oct. 27, 2017) ("Petitioner has established good cause based on his pro se status in state post-conviction proceedings." (citing *Dixon*, 847 F.3d at 720–22)).   Further, Respondents do not contest that Petitioner has set forth good cause for a *Rhines* stay, and there is no indication at this time that Petitioner's request for a stay is in furtherance of any dilatory litigation tactics.

Accordingly, for the foregoing reasons, the Court **RECOMMENDS** that Petitioner's Motion for Stay and Abeyance be **GRANTED**.

## V.    PETITIONER'S MOTION FOR LEAVE TO AMEND

Finally, Petitioner requests leave of Court to add a ninth claim to the Amended Petition.   (ECF No. 44.)   Respondents did not file a response to Petitioner's Motion for Leave to Amend.

## A.    LEGAL STANDARD

Habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."   28 U.S.C. § 2242.   Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."   "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2); *see also Calderon v. U.S. Dist. Court for N. Dist. of Ca.*, 134 F.3d 981, ///

986 n.6 (9th Cir. 1998) ("Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases.").

Courts shall "freely" give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although there is a strong policy of liberally allowing amendments pursuant to Rule 15(a), courts must consider "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 844–45 (9th Cir. 1995) (applying Rule 15(a) in a habeas proceeding). Denial of leave to amend is also justified "where the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally." *Id.* (citing *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)).

## B.   DISCUSSION

Petitioner seeks to amend the Amended Petition to add a "claim of actual innocence." (ECF No. 44 at 1.) In support of his request, Petitioner cites to *Schlup v. Delo*, 513 U.S. 851 (1995), and contends that his former defense counsel has "refused to provide" him with "SDPD Axon Body-Worn Camera (BWC) footage/video" despite his "repeated written [and] oral request." (*Id.*) Petitioner provides nothing further in support of his request.

A petitioner asserts a freestanding claim of actual innocence by claiming they are factually innocent, independent of any alleged constitutional violations that may have occurred. *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997). The Ninth Circuit has not determined whether a petitioner in the non-capital context may assert a freestanding claim of actual innocence on a federal habeas petition.[12] *Jones v. Taylor*, 763 F.3d 1242,

---

[12] Additionally, it is unclear "whether the *Schlup* actual innocence gateway always applies to petitioners who plead guilty." *Smith v. Baldwin*, 510 F.3d 1127, 1140 n.9 (9th Cir. 2007) ("We are aware of a potential incongruity between the purpose of the actual innocence gateway announced in *Schlup* and its application to cases involving guilty (or

1246 (9th Cir. 2014).  A petitioner claiming actual innocence "must show that it is more likely than not that no reasonable juror would have convicted him in light of [some] new evidence." *Schlup*, 513 U.S. at 327.  "Actual innocence claims focus on 'new' evidence— i.e., 'relevant evidence that was either excluded or unavailable at trial.'" *Chestang v. Sisto*, 522 F. App'x 389, 391 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327–28).

The Court will assume a *Schlup* claim may be available in this non-capital, guilty plea context in order to address the merits of Petitioner's motion.  However, even assuming Petitioner's actual innocence claim is cognizable, the claim, as Petitioner articulates it in his request to amend, is frivolous.[13]  Petitioner provides only that he has requested police bodycam footage from his former defense counsel, but counsel has "refused to provide it." (ECF No. 44 at 1.)  Petitioner advances no theory concerning the contents of the bodycam footage, does not allege that footage demonstrates his innocence, and does not otherwise explain the factual basis of his actual innocence claim.  He states only that he wishes to "add an additional claim of 'actual innocence'" and has requested bodycam footage from counsel.  (*Id.*)  Moreover, Petitioner does not provide that the requested bodycam footage is *new* evidence that was unavailable at the time he pleaded guilty and was sentenced.  *See Chestang*, 522 F. App'x at 391.

///

---

no contest) pleas. . . .  For purposes of our analysis, however, we assume without deciding that the actual innocence gateway is available to [the plea-convicted habeas petitioner]."). Decisions in which the Supreme Court or Ninth Circuit has considered claims of actual innocence in a plea context involved subsequent case law that arguably rendered the petitioner's acts non-criminal.  *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 621–23 (1998); *Vosgien v. Persson*, 742 F.3d 1131, 1134–35 (9th Cir. 2013); *United States v. Avery*, 719 F.3d 1080, 1084–85 (9th Cir. 2013).  However, in 2016, the Ninth Circuit noted in an unpublished opinion that "a guilty plea does not foreclose the possibility of accessing the *Schlup* gateway."  *Corzine v. Baker*, 646 F. App'x 520, 520 n.2 (9th Cir. 2016).

[13]     The Court notes that Petitioner's Motion for Leave to Amend is not accompanied by a proposed second amended petition, as required by this District's Civil Local Rules. CivLR 15.1(b).

Additionally, there is no evidence before the Court that the bodycam footage Petitioner references exists, as there are no police reports relating to the crimes of conviction in the record.  There is a San Diego Regional Officer's Report Narrative from March 3, 2015, but this report describes an unrelated incident where police were called because Petitioner "was being violent towards his father" and "throwing items inside the[ir] home."  (ECF No. 15-11 at 122–26.)  This report also provides that a police officer responding to the incident "was equipped with a Body Worn Camera (BWC) and was in recording mode."  (ECF No. 15-11 at 124.)  However, to the extent Petitioner is referring to the bodycam footage from the March 3, 2015 incident in his motion, the Court cannot comprehend how that footage would be relevant to any claim of actual innocence in the instant matter.

Because Petitioner has not identified "any new, reliable evidence" demonstrating his innocence, the Court finds that Petitioner's actual innocence claim as currently articulated is frivolous.  *See Barnes v. White*, CASE NO. 3:20-cv-05357-RBL-JRC, 2020 WL 5822158, at *8–9 (W.D. Wash. Aug. 31, 2020) (denying a claim of actual innocence on the merits when petitioner had not "presented new, reliable evidence demonstrating that he is innocent"), *adopted by* 2020 WL 5822158 (W.D. Wash. Sept. 30, 2020).

Additionally, Petitioner provides no argument that his request to add an unexhausted actual innocence claim "is not brought in bad faith, to cause undue delay, or as a form of improper dilatory tactics."  The record shows that Petitioner has advanced actual innocence claims since his first habeas petition filed in the San Diego Superior Court on August 1, 2018.  In this petition, Petitioner listed "Actual/Factual Innocence (Schlup v. Delo)" in a list of "other potentially-meritorious grounds for habeas relief."  (ECF No. 15-5 at 5.)  Petitioner also advanced a claim in his California Supreme Court petition that his counsel "failed to investigate that someone other than [him] had actually inflicted the fatal injury to the victim" whose murder he is charged with.  (ECF No. 15-11 at 10.)  Petitioner, aware of the possibility of raising an actual innocence claim since at least August 1, 2018, offers

///

no argument and provides no explanation for why he could not and did not raise this claim earlier.

Accordingly, for the foregoing reasons, the Court **RECOMMENDS** that Petitioner's Motion for Leave to Amend be **DENIED**.

## VI.   CONCLUSION

**IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) **DENYING** Respondents' Motion to Dismiss (ECF No. 31); (3) **GRANTING** Petitioner's Motions for Stay and Abeyance (ECF Nos. 35; 49); and (4) **DENYING** Petitioner's Motion for Leave to Amend (ECF No. 44).

**IT IS ORDERED** that no later than **January 15, 2021**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to any objections shall be filed with the district court and served on all parties no later than **January 22, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated:  December 31, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge

19-cv-01964-LAB-JLB